UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE SHAW,

        Plaintiff,

v.

APWU HEALTH PLAN and LM
GENERAL INSURANCE
COMPANY,

        Defendants.
_____/

Case No. 2:18-cv-13590

HONORABLE STEPHEN J. MURPHY, III

## OMNIBUS OPINION AND ORDER

Plaintiff was injured in a car accident in 2015 and sought treatment for her injuries. ECF 41, PgID 2308. At the time, Plaintiff carried insurance under a policy governed by the Federal Employee Health Benefits Act ("FEHBA") due to her work as a postal worker and personal injury protection insurance through Defendant LM General Insurance Company ("LM General"). ECF 36, PgID 1020–21; ECF 36-3, PgID 1035. The American Postal Workers Union's Health Plan ("APWU Health Plan") administered the FEHBA plan. ECF 36-3, PgID 1035. The APWU Health Plan paid for Plaintiff's initial treatments, but after Plaintiff received a tort settlement that resulted from the car accident, APWU Health Plan placed a lien against Plaintiff for the full amount of the costs of her treatment. *Id.* at 1022; ECF 36-9, PgID 1055. Plaintiff objects to the lien but also claims that LM General is liable to reimburse her for any amount owed to APWU Health Plan. *Id.* at 1025–27.

1

Plaintiff moved for summary judgment against Defendant LM General, alleging that LM General is liable to reimburse Plaintiff for the subrogation lien asserted against her third-party recovery, and she claimed a right to statutory interest and attorney's fees. ECF 36. Defendant Cross-Claimant APWU Health Plan also moved for partial summary judgment against Defendant LM General and alleged that LM General must pay Plaintiff's personal injury benefits up to the full amount of benefits paid by APWU, and that APWU is entitled to statutory interest. ECF 38. The Court reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f). For the reasons below, the Court will grant in part and deny in part the pending summary judgment motions.

## BACKGROUND

The facts in this case are largely undisputed. In November 2015, Plaintiff sustained injuries in a car accident. ECF 41, PgID 2308. And, at the time, Plaintiff was a postal worker and member of the APWU. *Id.* Plaintiff held automobile insurance through LM General and health insurance through APWU. *Id.* at 2308–09. APWU paid the initial medical expenses incurred by Plaintiff, and then APWU notified LM General it had a subrogation clause in its contract with Plaintiff. *Id.* at 2309. At that point, Defendant LM General sent Plaintiff to undergo a "causality independent medical examination," which resulted in a conclusion that all of the treatment claimed by Shaw was causally related to the car crash. ECF 36, PgID 1012; ECF 41, PgID 2309.

In November 2017, Plaintiff received $47,000 in a tort settlement agreement with the third-party involved in the accident. ECF 36, PgID 1012; ECF 41, 2310. At

that point, APWU claimed its subrogation lien, which had grown to more than $69,000, and would consume the entire $47,000 third-party recovery from Plaintiff. ECF 36, PgID 1013; ECF 41, PgID 2310.

In January 2018, Plaintiff contacted LM General in writing and informed the company that her third-party claim had been settled. ECF 36, PgID 1013; ECF 41, PgID 2310. Her letter explained that LM General would be liable to reimburse her for the entire amount of the lien taken by APWU. ECF 36-9, PgID 1055. LM General refused to reimburse Plaintiff for any amount and the instant lawsuit followed. ECF 36, PgID 1013; ECF 41, PgID 2310.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

3

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

Disputes over the payment and reimbursement of insurance benefits, especially with plans governed by the FEHBA, are well-documented in Michigan. The FEHBA contains a preemption provision that provides any terms of a health insurance contract that relate "to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law . . . which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). Thus, whether or not Michigan law would allow the subrogation and reimbursement claims at issue here, the subrogation and reimbursement clauses are permissible under the FEHBA and accompanying regulations. *See Coventry Health Care of Mo. v. Nevils*, 137 S. Ct. 1190 (2017) (holding that 5 U.S.C. § 8902(m)(1) preempted a state statute that prohibited reimbursement and subrogation clauses).

Neither party disputes that APWU under its Health Plan, by the plain text of the insurance contract with Plaintiff, had a right to seek reimbursement from Plaintiff once she "receive[d] monetary compensation from someone else," and that this reimbursement may be "up to the total amount of benefits for the care related to the injury or illness that the Plan has paid or reasonably anticipates paying." ECF 38-4, PgID 1415. Plaintiff is "obligated to reimburse the Plan even if the amount [she] receive[d] does not compensate [her] fully or if [she] ha[d] other liens or expenses."

4

*Id.* The question before the Court, therefore, is not whether Plaintiff must reimburse the APWU Health Plan up to the $69,865.10 in benefits paid, including the $47,000 in tort recovery.

Instead, the case presents a series of interlocking questions related to the reimbursement rights of APWU Health Plan against Plaintiff, and in turn the corresponding obligation of LM General to reimburse Plaintiff. First, the parties dispute whether LM General must reimburse Plaintiff for the lien against her recovery in tort or if the $47,000 must be reimbursed to APWU. Next, Plaintiff asks whether APWU Health Plan may recover the remaining medical expenses, beyond the tort recovery that were paid on Plaintiff's behalf. If so, Plaintiff then asks whether LM General must reimburse Plaintiff for that additional amount. And finally, the parties dispute whether Plaintiff, the APWU Health Plan, or both are entitled to a statutory penalty or attorneys' fees under Michigan law. The Court will address each question in turn.

I.   Reimbursement for Amount of the Tort Settlement—$47,000

Both parties agree that if the Sixth Circuit's decision in *Shields v. Gov't Emps. Hosp. Ass'n*, 450 F.3d 643, 645 (6th Cir. 2006) controls, then the APWU Health Plan in entitled to the $47,000 tort recovery received by Plaintiff *and* LM General must reimburse Plaintiff that amount. ECF 41, PgID 2313. Like the present case, *Shields* involved the reimbursement of a FEHBA-governed health care plan with a subrogation clause and a plaintiff who received a tort recovery, all of which triggered the reimbursement provision of the FEHBA-governed plan. *Shields*, 450 F.3d at 645.

5

And when the *Shields* plaintiff sought coverage from her no-fault insurance carrier for the reimbursement amount, like LM General here, the private insurance company refused. *Id.* The Sixth Circuit found that a no-fault insurer must reimburse an injured person for the amount the injured person has to reimburse a federal health care plan from their tort recovery. *Id.* at 648. The Sixth Circuit reasoned that reimbursement is necessary, or it "would mean that the insured was covering his own medical expenses and lost wages despite the existence of a valid insurance policy." *Id.* ("The insured maintains an insurance policy for medical expenses and should not be required to pay her medical expenses without help from her insurance carrier.").

Because *Shields* is binding precedent, and the facts of the present case cannot be meaningfully distinguished in regard to the tort settlement, summary judgment is proper against LM General as to reimbursement of the tort settlement recovery—the initial $47,000 to be paid to APWU Health Plan. The Court will grant, in part, Plaintiff's summary judgment motion as to the amount of the tort settlement recovery, as well as APWU Health Plan's summary judgment motion as to the same amount.

II.     Reimbursement for Amount Outside the Third-Party Recovery

Next, the APWU Health Plan further has asserted Plaintiff's reimbursement right to the remaining monies it paid for Plaintiff's treatment beyond the amount that will be reimbursed for the tort recovery, roughly an additional $27,000. ECF 42, PgID 2328. The APWU Health Plan also asserted that LM General should reimburse Plaintiff for the additional amount. *Id.* LM General argued that even if Plaintiff must

6

reimburse the APWU Health Plan, the *Shields* line of reasoning is limited to tort liability recovery and does not extend LM General's reimbursement obligation to the circumstances at issue here. ECF 41, PgID 2317.

The terms of the APWU Health Plan make Plaintiff's obligation to reimburse APWU Health Plan to the full extent of the benefits owed clear in the case that Plaintiff *recovers money* from a source related to her injury. The reimbursement clause explains:

> "[t]he Plan must be reimbursed in any and all situations where a covered individual . . . receive[s] payment from any source related to an injury or illness for which the individual has received benefits or benefit payments from the Plan," and these "benefits" include "money recovered from . . . your own insurance policy, or . . . through a lawsuit, a judgment, settlement, or other recovery."

ECF 1-12, PgID 470. The clause then says that "[t]he Plan must be reimbursed to the extent of the benefits [the Plan] ha[s] paid or provided . . . in connection with the injury or illness," and does not cap the reimbursement. *Id.*

Under the Plan's language, APWU argued it is entitled to full reimbursement because Plaintiff "recovered money" from two sources. ECF 42, PgID 2330. First, Plaintiff recovered money in the tort settlement that was discussed above. And second, APWU argued that Plaintiff will recover money from her "own insurance policy" when LM General repays her the $47,000 for what she owed APWU under the first provision in the policy. In other words, Plaintiff will owe roughly $22,000 out of the $47,000 that she will be paid from LM General for reimbursement of the tort recovery Plaintiff must pay to APWU.

7

As explained above, *Shields* plainly requires Plaintiff to reimburse APWU Health Plan for the money received in tort and in turn Plaintiff must be reimbursed for the money from LM General. 450 F.3d at 648. Thus, Plaintiff will recover money from both the tort settlement and her "own insurance policy," and that double recovery will trigger her obligation to reimburse the Plan to the "extent of the benefits [the Plan] have paid or provided." As a result, the Court finds that Plaintiff must reimburse APWU Health Plan the full amount of benefits paid on her behalf provided that amount does not exceed the amount of money that she has received from the tort settlement and her insurance provider. But the conclusion does not resolve the question of whether LM General must reimburse Plaintiff for the additional money owed to APWU Health Plan beyond the initial tort recovery.

The *Shields* court clearly explained that if "[t]he insured maintains an insurance policy" from a no-fault insurer for medical expenses, then the insured "should not be required to pay her medical expenses without help from her insurance carrier." 450 F.3d at 648. Otherwise, the requirement of carrying no-fault insurance ends up being a fruitless exercise for many people. *Id.* Michigan case law also clearly explains that "[w]here the federal government requires a beneficiary to repay the compensation, the no-fault insurer *must pay* personal protection benefits to the extent restitution is required." *Kirkland v. Doe*, No. 342912, 2019 WL 5198559, at *5 (Mich. Ct. App. Oct. 15, 2019) (alteration in original) (emphasis added) (internal quotation omitted). Because the APWU Health Care Plan under the FEHBA does require the beneficiary to repay the compensation, LM General is required to pay

personal protection benefits to the extent restitution is required. And because Plaintiff will not only have to pay the $47,000 in tort damages, but also the remaining amount to cover her care, LM General must repay the full amount to make Plaintiff whole. Accordingly, the Court will grant Plaintiff's motion for summary judgment and Defendant Cross-Claimant APWU Health Plan's motion for partial summary judgment. Thus, Plaintiff must reimburse APWU Health Plan the initial $47,000 out of her tort recovery. In turn, LM General must reimburse Plaintiff this $47,000. Then, Plaintiff must reimburse the remaining amount of the lien out of this $47,000 paid to her by LM General. Finally, LM General must reimburse Plaintiff the amount paid to APWU Health Plan to satisfy the remaining portion of the lien.

III. <u>Statutory Interest</u>

The Michigan No-Fault Act provides that insurers must make a payment within thirty days of receiving "reasonable proof of the fact and the amount of the loss sustained." Mich. Comp. Laws § 500.3142(2). And overdue payments carry a simple interest rate of twelve percent per year. *Id.* The statute also provides that if reasonable proof is not provided for the entire claim, then the portion for which reasonable proof is provided is still overdue after thirty days. *Id.*

Here, Plaintiff argued LM General must pay statutory interest on the $47,000 portion of the lien because it received reasonable proof of the fact of loss and amount of it as of January 26, 2018. ECF 36, PgID 1027. LM General responded that it has never received reasonable proof of fact or the amount of the loss and maintained that

9

itemized bills and records are necessary to meet the statutory requirement. ECF 41, PgID 2319–20.

Michigan courts are clear that "[p]enalty interest must be assessed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable, irrespective of the insurer's good faith in not promptly paying the benefits." *Davis v. Citizens Ins. Co. of Am.*, 195 Mich. App. 323, 328 (1992) (citations omitted). The record suggests that LM General began learning about Plaintiff's accident and the Plan's subrogation clause, including some itemized medical bills, as early as March 2016. ECF 36-3. The medical bills provide an accounting for a few hundred dollars' worth of procedures. But LM General was made aware via a letter in January 2018 that Plaintiff had received a tort recovery of $47,000, ECF 39-9, and that under *Sibley*, APWU Health Plan would be seeking and entitled to reimbursement. *Id.* Still, the evidence presently in the record does not show whether or when LM General received an accounting of the medical bills paid on Plaintiff's behalf equal to or exceeding the settlement value of $47,000. Case law suggests that reasonable proof of the sustained loss requires more specificity than simply notice of a lien. *See, generally*, *Bronson Methodist Hosp. v. Auto-Owners Ins. Co.*, 295 Mich. App. 431, 451 (2012); *AOPP v. Auto Club Ins. Ass'n.*, 257 Mich. App 365, 377 (2003). Because of this disputed fact, which is material, the Court will deny both Plaintiff's and APWU Health Plan's summary judgment motions on the issue of the applicability of Michigan's statutory interest assessment.

IV. Statutory Attorney's Fees

The Michigan No-Fault Act also provides that an attorney's fee "is charged against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." Mich. Comp. Laws § 500.3148(1). Plaintiff argues that LM General's refusal and delay to pay is unreasonable and therefore it would be appropriate for the Court to award statutory attorney's fees. ECF 36, PgID 1028–29. But because the Court cannot determine whether LM General was unreasonable in delaying its payment without evidence to determine whether statutory interest is proper, the Court will deny Plaintiff and APWU Health Plan's summary judgment motions on the issue of statutory attorney's fees.

V.   Case Management

Because discovery has closed and the dispositive motion deadline has passed, ECF 12, ECF 35, the Court will refer the case to Patrick G. Seyferth for mediation. Due to the COVID-19 pandemic, the Court is unable to hold a jury trial in the foreseeable future. The Court highly encourages a good faith and successful mediation, but in the event mediation fails, the parties must submit a joint status report to inform the Court whether they consent to a bench trial in April 2021.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's motions for summary judgment [36, 37] are **GRANTED IN PART**, **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant Cross-Claimant's motion for summary judgment [38] is **GRANTED IN PART, DENIED IN PART**.

11

**IT IS FURTHER ORDERED** that the Court therefore **REFERS** the case to Mr. Patrick Seyferth[1] for mediation and settlement discussions and **ORDERS** the parties to proceed in compliance with Local Rule 16.4. The mediation and settlement discussions shall occur no later than **March 24, 2021**. The parties shall contact Mr. Seyferth and provide him with a copy of this order as soon as practicable and shall **NOTIFY** the Court of the date of the mediation session once it is scheduled.

**IT IS FURTHER ORDERED** that Mr. Seyferth shall **NOTIFY** the Court within seven days of completion of the mediation, stating only the "date of completion, who participated, whether settlement was reached, and whether further [alternative dispute resolution] proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties shall **NOTIFY** the Court immediately upon completion of the mediation and shall **SUBMIT** a proposed order of dismissal within 21 days. *Id.* at 16.4(e)(7). If a settlement is not reached, the parties shall **NOTIFY** the Court within seven days of the completion of the mediation.

**IT IS FURTHER ORDERED** that if the parties are unable to resolve the case with Mr. Seyferth's assistance, they shall **SUBMIT** a joint status report, no later than seven days after the mediation, informing the Court if they will consent to a bench trial.

**SO ORDERED.**

Dated: March 1, 2021

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

---

[1] Patrick Seyferth is a private attorney and founding member of the firm Bush Seyferth, PLLC. He can be reached at (248) 822-7802 and at Seyferth@bsplaw.com.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 1, 2021, by electronic and/or ordinary mail.

                                          s/ David P. Parker
                                          Case Manager